# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLEY B. BEASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-551-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Kimberley B. Beason requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 4, 1975, and was forty years old at the time of the administrative hearing (Tr. 299, 301). She has a high school education, and has worked as a dipper, folding machine operator, and carton packaging machine operator (Tr. 30, 87). The claimant alleges that she has been unable to work since an amended onset date of February 1, 2012, due to bipolar disorder, depression, high blood pressure, posttraumatic stress disorder, anger control problems, and headaches (Tr. 326, 375, 403).

**Procedural History**

On June 17, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on July 31, 2013 (Tr. 299-306). Her applications were denied. ALJ Christopher Hunt conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 25, 2015 (Tr. 20-32). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work with occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling, but

never climbing ropes, ladders, and scaffolds, or working around extreme heat like ovens or furnaces (Tr. 24-25). The ALJ found that the claimant was limited to simple, repetitive, and routine tasks with occasional contact with co-workers, supervisors, and the general public (Tr. 24-25). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, document preparer, addresser, and parimutuel ticket checker (Tr. 41-43).

**Review**

The claimant contends that the ALJ erred by failing to: (i) account for her marked limitation in her ability to understand, remember, and carry out detailed instructions; (ii) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and (iii) make sufficient findings as to whether work existed in significant numbers. The Court agrees with the claimant's first and second contentions, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of posttraumatic stress disorder, major depressive disorder, an anxiety disorder, intermittent explosive disorder, and obesity, but that her hypertension, hypothyroidism, and headaches were non-severe (Tr. 22). The relevant medical records as to the claimant's mental impairments reveal that her primary care physician, Dr. Tye Ward, treated her for depressive disorder between November 2012 and November 2013 (Tr. 459-540, 660-70).

The claimant established care at Multi-County Counseling on September 9, 2013, and reported grief, depression, anger, and isolation since the death of her mother eight years earlier (Tr. 562). At this initial appointment, counselor Kathy Stafford conducted a mental status examination and noted the claimant had a flat affect, depressed mood, logical thought processes, intact memory, fair insight, and fair judgment (Tr. 559-60). She diagnosed the claimant with posttraumatic stress disorder, intermittent explosive disorder, and major depressive disorder (Tr. 562). By March 2014, the claimant had accomplished all of her treatment objectives, and new objectives were written for continued therapy (Tr. 626).

The claimant established care with counselor Shannon Dreadfulwater on March 23, 2015, and reported grief, depression, and anxiety with panic (Tr. 722). Ms. Dreadfulwater noted the claimant's mood/affect was anxious, depressed, and overwhelmed, that the claimant's response to treatment was better than expected, and that she was an active/eager participant (Tr. 722). Ms. Dreadfulwater reported that the claimant made progress at appointments in April 2015 and May 2015 (Tr. 724-26).

Dr. Kenny Paris performed a consultative mental status examination of the claimant on September 18, 2013 (Tr. 588-93). Dr. Paris noted that the claimant's thoughts were organized, logical, and goal-directed, and that she was able to stay focused on the exam (Tr. 589). He also noted her score was average on several Wechsler Adult Intelligence Scale sections including, *inter alia*, comprehension and concentration, and concluded that she had average intelligence (Tr. 591-92). Dr. Paris stated that the claimant's memory skills and judgment were adequate, and that she had no significant problems with persistence and pace (Tr. 592). He estimated that the claimant's ability to perform

adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was below average (Tr. 592).

On December 10, 2013, state agency psychologist CMK, Psy.D. completed a Psychiatric Review Technique form, and found that the claimant's mental impairments consisted of affective disorders and anxiety-related disorders, and that she was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 113-17). Dr. CMK then stated that the claimant experienced significant symptoms of mood and anxiety disorders that limited her to simple types of work in a non-public environment (Tr. 114). Dr. CMK also completed a Mental RFC Assessment ("MRFCA") and found that the claimant was markedly limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 115-16). In the written comments section, Dr. CMK wrote that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could adapt to a work situation, but could not relate to the general public (Tr. 117). These findings were affirmed on review (Tr. 159-60).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> ". . . lifting no more than ten pounds occasionally, less than ten pounds frequently; could sit six hours in an eight-hour day; stand or walk two hours in an eight-hour day; no climbing ladders, ropes, and scaffolding; only occasionally climbing stairs or ramps, balance, stoop, kneel, crouch, and crawl. Work will be limited to simple, repetitive and routine tasks with only occasional contact with the general public, co-workers, supervisors; essentially working with things rather than people; should have no strict

production standards and would need to avoid extreme heat. And I'm thinking of in the hot environment such as ovens, furnaces, or heat-dry machines."

(Tr. 87-88). The VE identified that the claimant could perform the jobs of document preparer, DICOT § 249.587-018; addresser, DICOT § 209.587-010; and parimutuel ticket checker, DICOT § 219.587-010 (Tr. 89-90).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. He gave significant weight to Dr. CMK's opinion, finding it was well supported by medically acceptable clinical and laboratory techniques, and was largely consistent with the record as a whole (Tr. 30). The ALJ determined the claimant's RFC as set forth above, and then adopted the VE's testimony that she could perform the jobs of document preparer, addresser, and parimutuel ticket checker (Tr. 24, 31).

The claimant argues that the ALJ failed to properly assess Dr. CMK's opinion, despite giving it significant weight. Specifically, she contends that ALJ failed to account for Dr. CMK's finding that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions because his RFC failed to account for the level of detail the claimant could perform. Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the

opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ's RFC assessment found the claimant could perform simple, repetitive, and routine tasks with occasional contact with co-workers, supervisors, and the general public, and without production quotas, it did not acknowledge Dr. CMK's findings related to the claimant's ability to perform detailed work (Tr. 24-25). *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government asserts that the findings of marked limitations contained in the first section of the mental RFC assessment are merely a "worksheet" and not Dr. CMK's ultimate opinion. *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessmen* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded."). The Commissioner thus argues that the findings of marked limitations are not necessary for inclusion in the ultimate RFC assessment because this position has been adopted in at least one unpublished opinion by

the Tenth Circuit. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015). However, the Tenth Circuit has found that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015). And here, the limitations were marked, not moderate, which bolsters the claimant's argument even further.

The Commissioner next contends that the jobs identified at step five nonetheless account for any inability to understand, remember, and carry out detailed instructions. The Court, however, finds that the jobs identified *do not* account for those limitations with regard to the reasoning level requirements. The jobs of document preparer, DICOT § 249.587-018, and addresser, DICOT § 209.587-010, both have a reasoning level of 3, which requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." The job of parimutuel ticket checker, DICOT § 219.587-010, has a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only

simple tasks.") [citations omitted]. If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

The Commissioner nevertheless argues that the law is unsettled and does not require reversal in this case because GED levels are related to the claimant's education level and background. *Anderson v. Colvin*, 514 Fed. Appx. 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *Mounts v. Astrue*, 479 Fed. Appx. 860, 868 (10th Cir. 2012) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."). As such, the Commissioner points to a number of District Court cases described as the "better-reasoned line of authority" because they refer to the DOT definition of these reasoning levels. *See, inter alia*, *Pacheco v. Colvin*, 83 F. Supp. 3d 1157, 1167 (D. Colo. 2015); *Owen v. Colvin*, 2015 WL 1490947, at *5 (D. Utah March 30, 2015). However, the Court finds that these cases, on their facts, are distinguishable from the present case in that they either determined harmless error because other jobs had been identified (which is *not* the absence of error), or referred to illiteracy or a different level of reasoning than the limitation to simple, repetitive, and routine tasks that is present in this case. Furthermore, the Court notes the Commissioner's reference to *Rom v. Colvin*, 2016 WL 3528059, at *3 (N.D. Okla. June 23, 2016), in which the United States Magistrate Judge found that "[t]he vocational expert, not the court, has the expertise to interpret the information in the DOT," *citing Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007). But here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the

DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this Circuit's holding in *Haddock*. In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (10th Cir. 2005) (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, it is not harmless here because the only three jobs identified had reasoning levels of 2 or 3. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's

RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 28th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**